IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Automotive Finance Corporation, | ) |
| | ) |
| Plaintiff, | ) Case No. 10-cv-2858 |
| v. | ) |
| | ) Judge Harry D. Leinenweber |
| Cindy Boliaux, Joliet Motors, Inc., Donald Schook and Jeremiah Reitz, | ) |
| | ) |
| Defendants. | ) |

## AUTOMOTIVE FINANCE CORPORATION'S MOTION FOR ENTRY OF JUDGMENT ON COUNT I AGAINST JOLIET MOTORS, INC.

Joliet Motors was served with a copy of Automotive Finance Corporation's (AFC) Complaint on June 1, 2010. No responsive pleading to the Complaint has been filed, and AFC hereby moves for entry of final judgment on Count I (successor liability) of its Complaint. In support of its motion, AFC states:

### Introduction

Automotive Finance Corporation ("AFC") provided floor-plan financing to a used car dealership in Joliet called EMC Automotive, Inc. ("EMC Automotive"). EMC Automotive was owned and operated by Edward Boliaux. In exchange for AFC financing EMC Automotive's acquisition of vehicle inventory and sales of vehicles to consumers, AFC was given a first-priority security interest in, among other things, EMC Automotive's vehicle inventory, customer contracts, commercial paper, retail installment contracts and equipment

Following various defaults in EMC Automotive's payment obligations to AFC, as well as several attempts by AFC to locate missing vehicle collateral by auditing EMC Automotive's lot, AFC filed a lawsuit in the Circuit Court of Will County, Illinois, Case No. 08 L 619 on August 1, 2008 (the "State Court Litigation").

1

On January 28, 2009, the State Court granted AFC's motion for summary judgment on the contract-based claim against EMC Automotive for the debt owed to AFC, $647,486.98. Following AFC's voluntary dismissal of its remaining claims in the State Court Litigation, on December 15, 1999, the State Court entered a final judgment on the contract-based claim in AFC's favor and against EMC Automotive in the amount of $647,486.98, plus attorneys' fees in the amount of $119,158.59 and costs in the amount of $5,286.07, for a total judgment amount of $771,931.64. No appeal of the State Court's final judgment was filed. (Certified copies of the State Court Orders of Judgment and AFC's Motion for Award of Attorneys Fees and Costs and for Entry of Final Judgment are attached hereto as **Exhibit 1**).

Shortly after the State Court complaint was filed, during September 2008, EMC Automotive removed its signs from the dealership lot and purported to cease operations. Signs for "Joliet Motors" were erected, and a purportedly new car dealership, said to be owned by Ed Boliaux's ex-wife Cindy Boliaux, began operating on the same lot using the same equipment and offices and employing the same individuals previously employed by EMC Automotive.

When questioned under oath in connection with Ed Boliaux's bankruptcy, Joliet Motors' alleged president Cindy Boliaux could not answer questions regarding Joliet Motors' corporate structure, its operations, finances, inventory or other matters. Documents and testimony obtained in the State Court Litigation and through Ed Boliaux's bankruptcy proceeding following orders of contempt against Cindy Boliaux and employee Jason Schook, establish that Joliet Motors was designed to, and did, continue EMC Automotive's operations and avoid its obligations to AFC and other secured creditors.

For example, as "rent" for its use and occupancy of the EMC Automotive lot, Joliet Motors simply paid Ed Boliaux's mortgage obligations on that property. Joliet Motors used the same database(s), equipment, vendors and contacts as EMC Automotive. And, most damaging to EMC Automotive's creditors, Joliet Motors and Cindy Boliaux continued to collect EMC

Automotive receivables (which are the property of AFC, Manheim Automotive Financial Services, and other lenders) and, with help from employees Jeremiah Reitz and Jason Schook, transferred those proceeds to Ed Boliaux in cash, instead of paying those amounts to the secured creditors.

Based on these and other facts, AFC seeks entry of a judgment on Count I of its Complaint ("Successor Liability") against Defendant Joliet Motors, Inc. Joliet Motors has failed to file an answer to AFC's Complaint, is no longer represented by counsel, but continues to operate the dealership at the Property. As a result, entry of a judgment against Joliet Motors is now appropriate.

1. **Entry of Judgment on Count I of the Complaint is Appropriate.**

   A. **AFC's Factual Allegations are Deemed Admitted.**

   Count I of AFC's Complaint is a successor liability claim brought against Joliet Motors, Inc. (A copy of AFC's Complaint is attached hereto as **Exhibit 2**). In short, AFC alleges that at the same time AFC began frequent audits of EMC Automotive's dealer lot in Joliet and filed a lawsuit to recover the significant debt owed to it, EMC Automotive's president Ed Boliaux ceased operating as EMC Automotive and created a new dealership, Joliet Motors, to continue the same business and in order to avoid EMC Automotive's obligations and continue to collect the creditors' receivables with the assistance of Cindy Boliaux and employees Shook and Reitz.

   The factual allegations of Joliet Motors' successor liability on the debt owed to AFC by EMC Automotive are deemed admitted as a result of Joliet Motors' failure to file a responsive pleading in this case. Fed. R. Civ. Pro. 8(b)(6). *See also, Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) (factual allegations of a complaint are deemed admitted upon defendant's default). The specific well-pled facts which are admitted include:
   - When AFC took action to collect debt from EMC Automotive during the Fall 2008, EMC Automotive ceased operating and Joliet Motors signs were erected at EMC Automotive's Joliet dealership lot (Compl., ¶ 22);

- The property on which Joliet Motors operates is owned by EMC Automotive president Ed Boliaux (Compl. ¶ 22);

- Ed Boliaux and Cindy Boliaux were officers and held beneficial interests in EMC Automotive, and now have the same or similar interests in Joliet Motors (Compl. ¶ 24);

- The Boliauxs commingle their assets and financial affairs, including sharing proceeds from the operation of Joliet Motors (Compl., ¶ 24);

- Ed Boliaux controlled the daily operations of EMC Automotive and acts in the same capacity with respect to Joliet Motors (Compl., ¶ 25);

- Ed Boliaux has represented to third parties that he is the owner of both EMC Automotive and Joliet Motors (Compl., ¶ 25);

- Though she purports to be its president, Cindy Boliaux cannot identify the shareholders of Joliet Motors, does not know when Joliet Motors has held a shareholder meeting, has no idea how much inventory has been sold by the entity or how that inventory was acquired, does not know how much Joliet Motors' employees are paid and cannot answer questions relating to other essential details of Joliet Motors' operations (Compl., ¶ 25);

- Joliet Motors does not maintain corporate formalities (Compl., ¶ 26);

- Joliet Motors and landlord Ed Boliaux did not negotiate a commercial lease of the facility formerly occupied by EMC Automotive at arm's length. Joliet Motors and its purported president Cindy Boliaux never considered or viewed other potential dealership locations, never contacted any other landowner regarding available property, never analyzed whether the rent it agreed to pay Ed Boliaux was consistent with rent charged to similar dealerships in Joliet, and, despite the commercial lease requiring Joliet Motors to pay Ed Boliaux $666 a month as rent, Joliet Motors instead paid Ed Boliaux's bank mortgage on the property – an amount over $3,000 a month – and never memorialized the agreement to pay Ed Boliaux's mortgage through a written instrument (Compl., ¶¶ 27, 28);

- Joliet Motors employs the same two persons as EMC Automotive (Compl., ¶ 29);

- Joliet Motors uses the same equipment, software, office supplies, file cabinets and desks that were previously used by EMC Automotive (Compl., ¶ 30);

- Joliet Motors collects accounts receivable due and owing to EMC

4

Automotive's finance arm, EMC Acceptance LLC, including accounts receivable on vehicles sold by EMC Automotive and financed by AFC; (Compl., ¶ 31);

- Joliet Motors and EMC Automotive accounts receivable are comingled (Compl., ¶ 31);

- Joliet Motors paid little, if any, consideration for its acquisition of EMC Automotive's physical assets, customer list and good will, and failed to pay adequate consideration for intangible assets that Joliet Motors; (Compl., ¶ 32);

- Joliet Motors is insufficiently capitalized (Compl., ¶ 32);

- Over $75,000 of Joliet Motors funds have been transferred to Ed Boliaux in cash while his bankruptcy has been pending, and additional Joliet Motors funds have been used to pay personal expenses of Cindy Boliaux (Compl., ¶¶ 34, 35);

- Joliet Motors funds have been used to pay for Ed Boliaux's bankruptcy attorneys, but these "loans" have no documentation, no agreed upon interest rate and have no terms regarding repayment to Joliet Motors (Compl., ¶ 36);

- Joliet Motors has not filed taxes for 2008, pays its employees in cash, and did not prepare tax statements for employees for the tax year 2009 (Compl., ¶ 36);

- Joliet Motors' employees and officers knew that EMC Automotive's secured creditors held a security interest in EMC Automotive's receivables, and, nonetheless, have collected those receivables and converted funds into cash by structuring checks made payable to Joliet Motors and drawn on Joliet Motors' bank accounts, converting the checks to cash, and transferring the cash to Ed Boliaux (Compl., ¶¶ 38-52);
- Joliet Motors is a mere continuation of the operation of EMC Automotive (Compl., ¶ 57);

- Because of EMC Automotive's transfer of assets to Joliet Motors, EMC Automotive is unable to pay its debt to AFC (Compl., ¶ 61); and

- Joliet Motors is being used as a vessel to collect funds owed by EMC Automotive to AFC and to transfer and hide those funds to prevent EMC Automotive's creditors from attaching them (Compl., ¶ 61).

In addition to these facts, Joliet Motors' alleged president, Cindy Boliaux, has been deposed on the issues of Joliet Motors' continued operation of EMC Automotive in order to

5

escape liability for EMC Automotive's obligations to AFC and other secured creditors. But during her May 27, 2010 examination within Ed Boliaux's bankruptcy proceeding, Mrs. Boliaux refused to answer AFC and Manheim Automotive Financial Service's questions on the grounds that her answers may incriminate her:

### Page 10

Q: The income statement of Joliet Motors . . . lists gross profit of $146,284 ... that number contains figures from EMC, does it not?

A: On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

### Page 12

Q. The balance sheet of Joliet Motors with the Bates No. ACB 228 lists $638,061 in net receivables. Does that figure contain receivables of EMC, ma'am?

A. On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

### Page 15

Q: Are you still collecting collateral of Manheim Automotive Financial Services and AFC and giving the proceeds from that collateral to Ed Boliaux in cash?

A: On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

### Page 16

Q. I show you what's been previously marked at your examination as Exhibit No. 27. It's a one-page list of $62,900 in Joliet Motors checks which were payable to EMC Automotive. Ma'am, why would Joliet Motors be paying EMC $62,900?

A. On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

## Page 17

Q. If we go two ahead to the page that's Bates numbered 1294, it's a check from Joliet Motors to Edward Boliaux dated March 19 of 2009. Ma'am, did Mr. Boliaux ever work for Joliet Motors?

A. On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

## Page 18

Q: [T]here's a $4,850 check from Joliet Motors, again, to EMC Automotive. This was about a half a year after Joliet Motors had taken over EMC's dealer lot. Why was Joliet Motors paying EMC $4,850 at the end of March 2009?

A: On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

## Page 20

Q: Ma'am, Mr. Boliaux actually runs Joliet Motors, doesn't he?

A: On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

Q: And isn't that why a stamp was affixed to almost every single Joliet Motors check is because you're not doing, but Mr. Boliaux or somebody else is doing it at [Ed Boliaux's] direction?

A: On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

## Page 23

Q. The next page Bates numbered 1313 contains another check to Ed Boliaux. Why was Joliet Motors paying Ed Boliaux in of 2009?

A. On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

## Page 24

Q. Ma'am, isn't Joliet Motors simply using Manheim Automotive Financial Service collateral and AFC collateral to pay Ed Boliaux in cash what Manheim Automotive Financial Services and AFC are rightfully entitled to?

A. On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

## Page 26

Q. Ma'am, was Joliet Motors using the funds it was collecting on the collateral of MAFS or AFC to pay your personal expenses?

A. On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

Q: How about Mr. Boliaux's personal expenses?

A: On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

## Page 36

Q: Ma'am, are you assisting Mr. Boliaux in collecting funds that are owed to him in order to prevent his creditors from receiving it?

A: On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

## Page 58

Q. Ma'am, you testified that you paid Ed Boliaux a little over $70,000 in cash. None of those transfers are contained in the general ledger. Why?

A.   On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

### Page 65

Q:   And is it also correct that Ed Boliaux directed you to form Joliet Motors after AFC had executed an order of replevin on all the vehicle collateral on EMC's lots in Joliet?

A:   On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

### Page 66

Q:   It is also correct, is it not, that you and Ed Boliaux set up a management agreement and lease to facilitate moving funds from EMC to Joliet Motors and ultimately to Ed Boliaux personally?

A:   On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

Q:   You, Ms. Boliaux, were aware that the funds being collected by EMC were a result of buy here pay here vehicles sales, the proceeds in which MAFS and AFC were the first priority secured lenders, correct?

A:   On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

### Pages 66-67

Q:   You and Mr. Boliaux then set up Joliet Motors in part to launder those funds by having [Joliet Motors] collect the proceeds and then issue a series of checks and cash transactions by which those proceeds belonging to MAFS and AFC were delivered in cash to Ed Boliaux; isn't that correct?

A:   On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

Q: It is correct that [Joliet Motors] received the assets of EMC with no valid consideration paid, correct?

A: On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

Q: It is true, is it not, that [Joliet Motors] is, in fact, an alter ego for EMC in that it is collecting funds that EMC created by buy here pay here contracts with retail customers? It is using the same computer equipment, it is using the same facilities and it is using the same employees?

A: On advice of counsel, I decline to answer and exercise my Fifth Amendment rights.

A copy of the complete transcript from May 27, 2010 is attached hereto as **Exhibit 3**.

**B. The Admitted Facts Establish Successor Liability.**

Illinois law recognizes several exceptions to the general rule of successor corporate nonliability, including when the successor corporation is a continuation of the predecessor, and where the predecessor's assets are transferred to the successor in an attempt to escape liability for the predecessor's obligations. *Diguilio v. Gross Intern. Corp.*, 389 Ill. App. 3d 1052, 1060 (1st Dist. 2009). These exceptions are aimed at blocking situations where "the specific purpose of acquiring assets is to place those assets out of the reach of the predecessor's creditors." *Vernon v. Schuster*, 688 N.E.2d 1172, 1176 (Ill. 1997).

Both exceptions to successor nonliability apply here. As the record facts demonstrate, Joliet Motors is the "mere continuation" of EMC Automotive, and was set up to shield the assets of EMC Automotive from its secured creditors. Joliet Motors maintains the same management and ownership as EMC Automotive – Ed Boliaux operates both entities, holds himself as owning both and has received cooperation from Cindy Boliaux (who knows little or nothing about Joliet Motors' business, formation, finances or inventory acquisition) in order to

shield himself and EMC Automotive from his creditors' debt enforcement efforts. Joliet Motors uses the same dealer lot, offices, employees, equipment, customer lists and vendors as EMC Automotive, and has continued that entity in order to fraudulently transfer EMC Automotive receivables (AFC's collateral) to Ed Boliaux and/or EMC Automotive.[1]

These factors, plus the strong scent of fraud present here (as alluded to by the *Vernon* court, see *id.*) as well as Cindy Boliaux's refusal to answer questions about Joliet Motors' transfer of money to EMC Automotive on the grounds her answers may incriminate her, leave little doubt that Joliet Motors merely "wears different clothes" than EMC Automotive. *Brandon v. Anesthesia & Pain Management Associates, Ltd.*, 419 F.3d 594, 599 (7th Cir. 2005) (finding successor liability where successor corporation had same beneficial owners and employees as predecessor and where ownership structure and contracts were essentially identical to that of predecessor).

Because EMC Automotive merely changed its form, "without significant change in substance," Joliet Motors should not escape liability for the debt owed to AFC pursuant to the $771,931.64 State Court judgment. *Id.* ("It doesn't matter whether we call [successor corporation] APM's continuation, or APM's alter ego . . . or a fraudulent shield interposed between [plaintiff's] claim and the defendant's assets. Under any of these formulations, [plaintiff seeking successor liability] is entitled to ignore the formation of [successor corporation] and treat its assets as if they were APM's").

C. No Hearing on Damages is Necessary.

It is proper for the Court to determine that no hearing on AFC's damages is necessary because the amount of AFC's damages are readily ascertainable from definite figures contained

---

[1] Notably, in order to transfer significant amounts of these receivables to EMC Automotive and Mr. Boliaux, Joliet Motors engaged in a check structuring scheme in which it drew checks on Joliet Motors' account (usually in an amount under $10,000), payable to Joliet Motors, then converted the checks to cash and gave the cash to Ed Boliaux.

11

in the documentary evidence produced herewith. *See, e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (no hearing on damages following defendant's default is necessary if the amount claimed is ascertainable from definite figures and supported by the documentary evidence); and *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (holding that a district court does not abuse its discretion in determining that no hearing to determine amount of damages is necessary where amounts claimed are liquidated).

AFC seeks only the amount awarded to it in the State Court Litigation, $771,931.64. (*See* Ex. 1 hereto). Based on the facts alleged in AFC's Complaint and the failure of Joliet Motors to answer the Complaint in the four months since being served in this action, the Court should enter judgment in favor of AFC and against Joliet Motors in the amount of $771,931.64, plus pre-judgment interest at the statutory rate as of December 15, 2009. (A proposed Order is attached hereto as **Exhibit 4**).

Respectfully submitted,

**AUTOMOTIVE FINANCE CORPORATION**

/s/ Timothy L. Binetti

Todd A. Rowden
Timothy L. Binetti
THOMPSON COBURN LLP
55 E. Monroe Street
Chicago, IL 60603
312.346.7500
ARDC No. 6282534