```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF ILLINOIS
            EASTERN DIVISION
```

| | |
|---|---|
| **AUTOMOTIVE FINANCE CORP. and MANHEIM AUTOMOTIVE FINANCIAL SERVICES, INC.,** | |
| Plaintiffs, | **Case No. 10 C 2858 consolidated with Case No. 10 C 3411** |
| v. | |
| **JOLIET MOTORS, INC. and CINDY BOLIAUX,** | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs Automotive Finance Corp. (hereinafter, "Automotive") and Manheim Automotive Financial Services, Inc.'s (hereinafter, "Manheim") Motions for Summary Judgment to pierce Joliet Motors, Inc.'s (hereinafter, "JMI") corporate veil and find Defendant Cindy Boliaux (hereinafter, "Cindy") personally liable for judgments entered against JMI. For the reasons stated below, the Motions are granted.

### I. BACKGROUND

Edward Boliaux ("Edward") operated and was a part owner of the car dealership EMC Automotive ("EMC") in Joliet, Illinois. He was married to Cindy, during which time Cindy owned 51 percent of EMC; she transferred her ownership in the dealership to him when they divorced in September 2005.

EMC had a financing agreement with Automotive, under which Automotive had a perfected security interest in EMC's vehicles, customer accounts, and other collateral. Automotive lent EMC money and extended it credit until July 28, 2008, when it learned that EMC had sold vehicles in which Automotive held a security interest without making the required payments, as well as not forwarded it agreed upon payments from retail installment contracts. Automotive filed an action against EMC and Edward in the Circuit Court of Will County in 2009. That court granted summary judgment in favor of Automotive against EMC and Edward, and entered a judgment in the amount of $647,486.98, plus $119,158.50 in attorneys' fees and $5,286.07 in costs.

Manheim provided EMC financing to purchase vehicles and sell them via installment contracts. Manheim had a perfected security interest in EMC's vehicles, customer contracts, and other collateral. After EMC defaulted on this financing, Manheim also brought an action against EMC and Edward in the Circuit Court of Will County. That court granted summary judgment in favor of Manheim against EMC and Edward, with a judgment in the amount of $410,019.88. Around September 2008, EMC ceased operations, and Joliet Motors and JM Motors signs were erected on its property. Cindy owns JMI, and serves as its sole officer, director, president, secretary, and treasurer.

Edward filed for Chapter 7 bankruptcy on April 10, 2009. On May 7, 2010, Automotive filed its Complaint with this Court against

JMI and Cindy, seeking to find them liable for the Will County judgment. Shortly thereafter, Manheim filed a similar Complaint. The two cases were consolidated on October 8, 2010. On October 7, the Court entered a final judgment against Joliet Motors for Manheim's Will County judgment of $410,019.88, finding that JMI has successor liability as a mere continuation of EMC. On October 13, the Court entered a similar judgment that made JMI liable for Automotive's Will County judgment of $771,931.64.

Plaintiffs move for summary judgment against Cindy, asking the Court to pierce JMI's corporate veil and find Cindy individually liable for the Will County court judgments against EMC.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could affect the suit's outcome under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on summary judgment, the Court does not to weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *See id*. at 249. In making this determination, the Court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. Am. Family Mut.*

*Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *See Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984).

### III. <u>**ANALYSIS**</u>

As an initial matter, Cindy has submitted a Motion for Leave to Supplement Responses to Plaintiffs' Motions for Summary Judgment. ECF No. 72. She submitted this Motion almost one month after she submitted her initial Response to Plaintiffs' Motions. ECF No. 61. Her initial Response failed to respond to either Plaintiff's Local Rule 56.1 Statement of Material Facts, and therefore they were deemed admitted. *See* N.D. Ill. R. 56.1(a)(3)(B). The attorney who submitted this Response subsequently withdrew (ECF No. 65), and Cindy filed a Motion to Substitute Attorney (ECF No. 70), which the Court granted.

Cindy claims that her prior counsel's failure to comply with Local Rule 56.1 unduly prejudiced her in this matter. Cindy, however, "must be held accountable for the acts and omissions of [her] attorneys." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993). A court can disregard late-filed motions and supporting materials. *See Jovanovic v. In-Sink-Erator*

- 4 -

*Div. of Emerson Elec. Co.*, 201 F.3d 894, 897 (7th Cir. 2000). Although under no obligation to grant Cindy's Motion, the Court reluctantly, and in consideration of Plaintiffs' objections stated in open court on December 15, 2010, grants Cindy's Motion for Leave to Supplement. Although not yet properly filed, the Court considers Cindy's new Response, Statement of Material Facts, and Response to Plaintiffs' Statements of Material Facts in ruling on summary judgment. ECF No. 72 Exs. 1, 2, 3. Plaintiffs, however, need not file a reply to the new materials (unless they elect to do so for the record, and to respond to Cindy's Statement of Material Facts), as this new material does not create a genuine issue of material fact that would prevent the Court from granting summary judgment to pierce JMI's corporate veil.

The Court has already found that JMI has corporate successor liability for the Illinois state court judgments against EMC. ECF No. 56. Therefore, Cindy's extensive arguments concerning successor liability made in her argument opposing summary judgment on piercing the corporate veil are irrelevant, and the Court will not consider them for the purposes of these Motions.

The Court may pierce JMI's corporate veil and find Cindy personally liable for EMC's judgments if JMI is merely designed to conduct her personal business. *See Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 775-76 (Ill.App.Ct. 2005). The Court should undertake the task of piercing the corporate veil reluctantly. *See Pederson v. Paragon Pool Enters.*, 574 N.E.2d 165, 167

(Ill.App.Ct. 1991). Accordingly, a plaintiff moving to pierce a corporate veil has a substantial burden. *See Kelsey Axle & Brake Div., Div. of Kelsey-Hayes Co. v. Presco Plastics, Inc.*, 543 N.E.2d 239, 243 (Ill.App.Ct. 1989). Illinois courts use a two-prong test to determine whether a plaintiff has met this burden: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) adhering to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. *Int'l Fin. Servs. Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004).

To determine whether a unity of interest exists, the Court may consider numerous nondispositive factors, including: "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders." *Fontana*, 840 N.E.2d at 778. These factors focus on whether the corporation is a sham that acts at the whim of the controlling party. *See Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 611 (7th Cir. 2009).

The Court finds that no material issue exists that Plaintiffs have met the first prong of the test. The Court need not consider all of the factors, but will first address those which do not necessarily allow the Court to pierce JMI's corporate veil. In regard to JMI's capitalization, Cindy testified that she capitalized JMI with $10,000 to $20,000 drawn from her personal credit cards. Plaintiffs contend that these funds were woefully insufficient to start an auto dealership, especially considering that they were drawn from a personal credit card. Cindy argues that because she used floor plan financing to purchase inventory and that she paid her employees by commission, the $10,000 to $20,000 adequately covered her only expenses — utilities and rent. Plaintiffs have not presented any evidence demonstrating what constitutes sufficient capital to start an auto dealership. Without knowing the proper capitalization for an auto dealership, the Court cannot determine that JMI was undercapitalized.

Cindy also contends that as the sole shareholder, director, and officer of JMI, she does not have to adhere to numerous corporate formalities because she operates the corporation akin to a sole proprietorship. JMI not holding board meetings would not on its own allow the Court to pierce its corporate veil, as an individual running her own company would not be expected to hold corporate meetings. *See Laborers' Pension Fund v. Paragon Pool. Const., Inc.*, No. 00 C 2408, 2001 WL 218642, at *2 (N.D. Ill. Jan. 16, 2001). However, JMI disregards other corporate formalities which indicate

misuse of the corporate form. For example, JMI did not keep a general ledger during its first five months of operation. Also, although Cindy is the sole shareholder, officer, and director or JMI, she has testified in a deposition that she does not know how she incorporated JMI. She testified that for some reason, the Illinois Secretary of State went to JMI to incorporate the company, and that she did not remember if she filed any papers or paid any fees to incorporate the business. Cindy Boliaux Dep. 48:23–51:22, Sept. 18, 2009. In September 2009, she also did not know if she was the sole shareholder of JMI, the value of her shares in JMI, how many shares of JMI stock were issued, and if the JMI shareholders or board of directors had ever met. *Id*. at 51:23–53:4. Boliaux's sworn statements proclaiming her ignorance on these crucial matters of corporate formation are uncontested, and weigh heavily in favor of piercing JMI's veil.

The commingling of JMI's and Cindy's funds weighs even more significantly in the Court's holding to pierce JMI's veil. JMI pays Edward's mortgage obligations on the property at which JMI sits. Cindy testified that JMI has transferred more than $100,000 in cash to Edward, for which it did not obtain receipts. It has also transferred almost $75,000 in checks to Edward, and provided interest-free loans to him to pay his attorneys' fees and home utilities. While she claims that these cash disbursements are not improper as they are merely loans, she does not possess any contracts or other agreements concerning the terms of these loans. It does not

make practical business sense for Cindy liberally to siphon JMI's funds to Edward, her former husband, and not a director, officer, shareholder, creditor, or employee of JMI. Rather, this use of the funds appears to demonstrate that Cindy uses JMI's accounts for personal reasons.

Cindy also admits and has testified that JMI funds are used to pay her personal bills, including those for hair styling, television services, her home mortgage, credit cards, groceries, utilities, telephone, travel expenses, golf expenses, and even Chicago White Sox and Blackhawks tickets. She claims that these are merely disbursements that she took pursuant to her position as the sole officer of JMI. The Court will not engage in a battle of semantics concerning whether these payments were corporate disbursements or personal payments. The uncontested facts are that JMI directly pays Cindy's bills. The money does not first go to Cindy. Plaintiffs have presented a ledger that shows JMI making these payments, and Cindy does not claim that this ledger is inaccurate. Accordingly, the Court finds that JMI and Cindy have a unity of interest and ownership, and therefore do not have separate personalities.

For the second factor to pierce the veil, the Court asks if not doing this would sanction a fraud or promote injustice or inequitable consequences. *Fontana*, 840 N.E.2d at 781. Cindy has stated under oath that JMI collects EMC's accounts receivable and forwards the money to Edward—pursuant to a management agreement between JMI and EMC—despite EMC's secured creditors trying to enforce EMC's debt

obligations to them. She admits to knowing that JMI collected money that EMC's creditors were attempting to recover, and in her defense argues that Plaintiffs did not inform JMI of its claim on the payments. This defense has no merit, as, again, Cindy admits that she knew about EMC's debt obligations. In addition, the Court has already ruled that JMI has successor liability to EMC. Cindy has testified that she uses JMI's corporate funds — which are due to Plaintiffs pursuant to the judgments against EMC — to pay her personal expenses. These facts satisfy the second prong of the test.

## IV. CONCLUSION

For the reasons stated herein, the Court pierces JMI's corporate veil and grants Plaintiffs' Motions for Summary Judgment against Cindy. She is individually liable for Automotive's Will County judgment of $771,931.64, plus interest, and Manheim's Will County judgment of $410,019.88, plus interest.

**IT IS SO ORDERED.**

*[signature]*

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 1/6/2011